UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

TRIPLE CROWN, INC. d/b/a BUCK
BRADLEY, LLC,

   Plaintiff,        Case No.: _____

v.               Milwaukee County Case No. 2022CV001155

AUTO-OWNERS INSURANCE,

   Defendant.

---

## DEFENDANT'S NOTICE OF REMOVAL

  Defendant Auto-Owners Insurance Company ("Auto-Owners") gives notice that, pursuant to 28 U.S.C. § 1332, this matter is removed from the Circuit Court of Milwaukee County, Wisconsin, to the United States District Court for the Eastern District of Wisconsin. In support of this Notice, Auto-Owners states:

  1.  Plaintiff Triple Crown, Inc. d/b/a Buck Bradley, LLC ("Triple Crown") filed its Complaint against Auto-Owners in the Circuit Court of Milwaukee County, Wisconsin, on February 22, 2022. The Complaint was served on Auto-Owners' registered agent on February 23, 2022. A copy of the Complaint and Summons are attached hereto as Exhibit A.

  2.  The attached documents constitute all process, pleadings, and orders received or obtained by Auto-Owners in this action.[1]

---

[1] Although a copy of the insurance policy at issue is referenced in the Complaint, no policy was attached to the copy of the Complaint served on Auto-Owners.

3. The Notice is timely because it was filed within 30 days of service of the Complaint. *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) (time for removal calculated from date of formal service of the summons and complaint).

4. Auto-Owners is the only named Defendant in this case. Therefore, each Defendant has consented to removal in accordance with 28 U.S.C. § 1446(b)(2)(A).

5. A case may be removed to a federal court if it could have been brought in that court originally. 28 U.S.C. § 1441(a), (b); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474-75 (1998).

6. This case could have been originally filed in federal court because there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

7. Triple Crown is a Wisconsin "corporation duly authorized to conduct business in the State of Wisconsin with its principal place of business located at 1019 N. Old World 3rd Street, Milwaukee, Wisconsin 53203[.]" (Compl. ¶ 9.)

8. Auto-Owners is a Michigan insurance company formed under Michigan law, with its principal place of business in Lansing, Michigan. (*See id.* ¶ 10.)

9. Because Triple Crown and Auto-Owners are domiciled in different states, complete diversity exists. *Smart v. Local 702 IBEW*, 562 F.3d 798, 803 (7th Cir. 2009).

10. The amount in controversy is calculated as of "the day the suit was removed." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510-11 (7th Cir. 2006). Determining this amount can be difficult when, as here, "the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims." *Id.* at 511. In that case, "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.*

2

11. Here, Plaintiff seeks actual damages that it labels as "a substantial monetary amount" (Compl. ¶ 58), in addition to "consequential damages" (*id.* ¶ 54), "extra-contractual damages" and "attorney fees" for alleged bad-faith conduct (*id.* ¶¶ 66-67), post-judgment interest, and "punitive damages in an amount to be determined at trial" (*id.* ¶ 69). These damages stem from lost income due to Triple Crown's inability to operate as intended during the COVID-19 pandemic, which Triple Crown contends it is entitled to under an insurance policy issued by Auto-Owners that provides for "business interruption" coverage. (*Id.* ¶¶ 13-14.)

12. As to actual damages, a company serving small businesses in Wisconsin "analyzed daily revenue for 42,223 restaurants in all 50 states, including Wisconsin" during the 2018 calendar year and determined that "restaurants in Wisconsin brought in $837 in revenue" on "an average day."[2]

13. Triple Crown shut down on March 16, 2020,[3] and was required to remain closed for in-person business under the City of Milwaukee's shut-down Order until June 5, 2020. Even after that time, restaurants could only open in limited capacities.[4] Assuming Triple Crown would

---

[2] *See* Declaration of Amy L. Vandamme ("Vandamme Declaration"), ¶3, Exh. A, WOMPLY, *The State of Local Restaurants 2019 – Wisconsin*, available at https://www.womply.com/state-of-local-restaurants-2019/wisconsin-restaurants-2019/.

[3] Triple Crown made this representation in a recorded statement to Auto-Owners. *See* Vandamme Declaration, ¶ 5. This is consistent with the County of Milwaukee's and State of Wisconsin's shutdown orders. *See* Vandamme Declaration, ¶ 4, Exh. B, Alison Dirr, MILWAUKEE JOURNAL SENTINEL, *Milwaukee restaurants, bars ordered to close just before St. Patrick's Day*, available at https://www.jsonline.com/story/news/local/milwaukee/2020/03/16/milwaukee-bars-restaurants-ordered-close-because-coronavirus/5065451002/. During that same recorded statement, Triple Crown indicated it was not providing carry-out food services, as doing so would be unsustainable. *See* Vandamme Declaration, ¶ 6.

[4] *See* Vandamme Declaration, ¶ 7, Exh. C, Matt Piper, *Wisconsin's percent positive coronavirus rate continues downward trend as Milwaukee restaurants and state parks prepare to open*, MILWAUKEE JOURNAL SENTINEL, available at https://www.jsonline.com/story/news/2020/06/05/wisconsin-coronavirus-state-surpasses-20-000-cases-percent-positive-falls/3159982001/.

have earned an average of $837 in revenue per day during the 81-day complete shutdown, it lost out on $67,797 in revenue during that time period. (Compl. ¶ 14 (explaining that Triple Crown is seeking "the actual loss of 'Business Income' sustained by [Triple Crown] 'due to the necessary suspension' of [Triple Crown's] operations[.]").)

14. In addition, Triple Crown alleges it lost out on potential revenue while operating at reduced capacities after it was permitted to re-open (Compl. ¶ 46), and that it suffered other monetary damages as a result of its efforts to comply with public health orders and to protect its customers. (Compl. ¶ 36 (referencing purchases of "buffet plexiglass," the removal of "fifty percent of tables and seating," and "continually purchas[ing] additional cleaning supplies, masks and other PPE gear as the pandemic continued").)[5]

15. Thus, despite Triple Crown's failure to plead an actual damages amount, it can safely be estimated that actual damages claimed exceed $75,000.00.[6] *Oshana*, 472 F.3d at 511 (explaining a "good-faith estimate of the stakes" is sufficient").

---

[5] Any additional expenses Triple Crown would have incurred while operating during this period were mitigated by the $211,700 in Paycheck Protection Program ("PPP") loans it received in April 2020, and the additional $296,300 in PPP loans it received in March 2021. *See* Vandamme Declaration, ¶ 8, Exh. D, PROPUBLICA, *Tracking PPP*, available at https://projects.propublica.org/coronavirus/bailouts/search?q=triple+crown%2C+inc. Notably, other courts have found that PPP loan amounts are "persuasive evidence" of the amount of losses. *Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, No. 20-cv-04901, 2021 U.S. Dist. LEXIS 197638, at *13-14 (N.D. Ill. Oct. 14, 2021) (finding amount in controversy requirement satisfied in similar claim for business interruption coverage arising from COVID-19 pandemic).

[6] Auto-Owners by no means agrees that Triple Crown is entitled to these (or any) damages. It offers these calculations because courts look to the face of the complaint when assessing the amount in controversy. *McMillan v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) ("[W]e generally 'will accept the plaintiff's good faith allegation of the amount in controversy . . .'") (citation omitted); *Bosse v. Pitts*, 455 F. Supp. 2d 868, 872 (W.D. Wis. 2006) ("It is apparent from the face of plaintiff's complaint that her alleged claims (if proven) satisfy the jurisdiction[al] amount in controversy.").

16. Triple Crown's request for punitive damages must also be considered when calculating the amount in controversy. When punitive damages are requested by the plaintiff and available under state law, "the court has subject matter jurisdiction" based on the amount in controversy requirement "unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.'" *Cadek v. Great Lakes Dragaway*, 58 F.3d 1209, 1212 (7th Cir. 1995) (citation omitted).

17. Here, Plaintiff has raised a claim of bad faith and made an independent request for punitive damages. Punitive damages as high as seven times the amount of compensatory damages could, therefore, be available under Wisconsin law in the event Plaintiff prevails. *Jones v. Secura Ins. Co.*, 638 N.W.2d 575, 580 (Wis. 2002) ("[B]ad faith is an intentional tort and . . . may 'result in not only compensatory damages, but also punitive damages and damages for emotional injury.'"); *Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 661 N.W.2d 789, 803 (Wis. 2003) (recognizing the same and upholding punitive damages amount that was seven times the amount of compensatory damages); *Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 582 (7th Cir. 2017) (relying on another state's punitive "awards with multipliers higher than five" to explain that "a single class member with compensatory damages of $1 million could be awarded as much as $5 million in punitive damages"); *Anthony v. Security Pac. Fin. Servs.*, 75 F.3d 311, 317 (7th Cir. 1996) (recognizing that "[p]unitive damage awards for two or three times actual damages have been sustained").

18. Thus, even if Plaintiff's actual damages were significantly lower than $75,000.00, the availability of punitive damages would still satisfy the amount-in-controversy requirement. *Cadek*, 58 F.3d at 1212 (to find the amount in controversy lacking when punitive damages are

requested and available, it must be "clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount'") (citation omitted).

19. Finally, "under Wisconsin law, an insured who is successful in a bad-faith action can recover attorney fees as compensatory damages." *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721 (7th Cir. 2004) (citing *De Chant v. Monarch Life Ins. Co.*, 547 N.W.2d 592 (Wis. 1996)). Plaintiff does not specify what its attorney's fees are, but combining Plaintiff's fees with the alleged actual and punitive damages, the amount in controversy requirement is readily satisfied.

20. Indeed, numerous courts have found the amount-in-controversy requirement satisfied when addressing similar claims for business interruption insurance coverage made by businesses that were forced to shut down or limit operations during the COVID-19 pandemic. *See, e.g.*, *Windy City Limousine*, 2021 U.S. Dist. LEXIS 197638, at *13-14; *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 101-103 (S.D.N.Y. 2021).

21. Venue is proper in this Court because the Circuit Court of Milwaukee County, Wisconsin, is located in this District. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 130(a).

22. In accordance with 28 U.S.C. § 1446(d), a Notice of Filing of Removal and a copy of this Notice of Removal will be promptly filed with the Circuit Court of Milwaukee County, Wisconsin. A copy of that Notice will be served upon Plaintiff.

23. Auto-Owners' first responsive pleading will be filed within 7 days of the date of removal. *See* Fed. R. Civ. P. 81(c)(2).

WHEREFORE, Auto-Owners serves Notice that this action has been removed to the United States District Court for the Eastern District of Wisconsin.

[signature page to follow]

Dated: March 25, 2022 By: /s/ Amy L. Vandamme
Amy L. Vandamme
State Bar No. 1029784
Dykema Gossett PLLC
111 E. Kilbourn Avenue
Suite 1050
Milwaukee, Wisconsin 53202
Telephone: (414) 448-7345
avandamme@dykema.com

Lori McAllister (MI Bar No. P39501), *pro hac vice application forthcoming*
Dykema Gossett PLLC
Capitol View, 201 Townsend Street, Suite 900
Lansing, Michigan 48933
Telephone: (517) 374-9150
lmcallister@dykema.com

*Attorneys for Auto-Owners Insurance Co.*

# CERTIFICATE OF SERVICE

I, Amy L. Vandamme, an attorney, hereby certify that on March 25, 2022, I caused a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** to be electronically filed with the Court's CM/ECF System and served a copy upon the following counsel via email and first-class mail:

Christopher L. Strohbehn
Gimbel, Reilly, Guerin & Brown
330 East Kilbourn Avenue
Suite 1170
Milwaukee, WI 53202
cstrohbehn@grgblaw.com

/s/Amy L. Vandamme
Amy L. Vandamme

076799.000162  4869-5439-4904.1